**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Tracy McINTOSH, Appellee.**

Superior Court of Pennsylvania.

Argued March 21, 2006.

Filed Nov. 6, 2006.

William G. Young, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Thomas A. Bergstrom, Malvern, for appellee.

BEFORE: TODD, BENDER, and GANTMAN, JJ.

OPINION BY TODD, J.:

¶ 1 The Commonwealth appeals the judgment of sentence imposed on Tracy McIntosh after he entered a plea of *nolo contendere* to a single count of sexual assault. For the following reasons, we reverse and remand for resentencing.[1]

¶ 2 The charges in the instant case arose from a sexual encounter on the evening of September 6, 2002 between McIntosh, then a professor at the University of Pennsylvania ("Penn"), and the 23–year–old victim, M.R., who had just begun classes at Penn's veterinary school. M.R. also was the niece of a good friend of McIntosh and, because of McIntosh's relationship with M.R.'s uncle, M.R. and McIntosh had met each other prior to her matriculation at Penn. McIntosh offered to show M.R. around the city after M.R. moved to Philadelphia, and the two agreed to get together on September 6, 2002.

¶ 3 On that evening, M.R. and McIntosh met at McIntosh's research lab on Penn's campus. From there, the two embarked on a night of drinking that took them to three local bar/restaurants. Over the course of the evening, both parties consumed several alcoholic beverages. While at the second establishment, the White Dog Cafe, M.R. began to feel "strange" and "out of it." Upon moving to the third establishment, the Pod Bar, M.R. became disoriented and suffered memory loss and began projectile vomiting. In response to this situation, McIntosh walked M.R. back to his laboratory because she was unable to walk on her own, and gave her some marijuana, telling her that it would help settle her stomach. From this point forward, M.R.'s memory is fragmented and incomplete.

¶ 4 It is undisputed that McIntosh and M.R. returned to McIntosh's laboratory and that sexual intercourse later ensued. In statements given to the police, M.R. indicated only partial recollection of what took place at the laboratory. She recalls kissing McIntosh at some point and then later observing McIntosh with his penis in his hand and then, finally, she recalls McIntosh placing his penis inside her vagina. M.R. remembered pulling up her pants after the sexual encounter ended and then, later, being in a cab en route to her apartment. When M.R. awoke the next day, she began recalling more of the events of the evening, and she told friends and family about the perceived assault but did not immediately contact authorities because of her family's relationship with McIntosh. She finally called the police on November 18, 2002.

¶ 5 Over the next five months, the police investigated M.R.'s allegations, which ultimately led to McIntosh's arrest on April 23, 2003. The investigation did not end with McIntosh's arrest, however, as the police continued to investigate and attempted to collect evidence in support of the allegations and the theories of the case which were developed from M.R.'s statement. Among the theories the police attempted to develop was the possibility that McIntosh, who in his capacity as a re-

---

1. We deny McIntosh's motion to quash the Commonwealth's reply brief.

search professor in the health field had access to narcotics, had provided M.R. with Nembutal or some other narcotic. Additionally, police eventually seized a couch in McIntosh's laboratory with an eye toward seeking DNA samples to corroborate M.R.'s account of the events of the night in question. In the end, despite an audit of all narcotics to which McIntosh had access, police were not able to confirm any missing narcotics. Also, although samples taken from the couch were consistent with semen and vomit, no DNA results were obtained.

¶ 6 In response to charges of rape, sexual assault, indecent assault, unlawful restraint, knowing possession of a controlled substance, recklessly endangering another person, indecent exposure, and false imprisonment, on December 1, 2004, McIntosh pled *nolo contendere* to a single charge of sexual assault [2] and one count of knowing possession of marijuana.[3] At the plea colloquy, a factual predicate was stated for the plea: McIntosh had sexual intercourse with the victim without her consent as she had been rendered incapable of consenting due to intoxication. It was for these actions that McIntosh stood for sentencing on March 2, 2005.

¶ 7 After a lengthy sentencing hearing before the Honorable Rayford A. Means, in which the court heard from numerous witnesses called by the victim and McIntosh, and after reviewing a presentence investigation report and other documents, the court imposed sentence. As we discuss more fully below, the net effect of the sentence imposed and the actions taken by the court on March 2, 2005 was to allow McIntosh to avoid incarceration, aside from the day he spent in jail after his arrest, and to serve a period of house arrest followed by eight years of probation for his conviction of sexual assault, plus a consecutive term of two years probation for the drug offense. On March 4, 2005, the Commonwealth filed a motion for reconsideration of sentence. On March 18, 2005, the Commonwealth's motion for reconsideration was denied and, three days later, the Commonwealth filed the present appeal. Oral argument before this Court was held on March 21, 2006.

¶ 8 In this appeal, we are called upon to determine whether McIntosh's sentence is illegal, i.e., not authorized by statute, and whether the trial court abused its discretion by rendering an excessively lenient sentence. Specifically, the Commonwealth presents two questions for our review:

1. Did the lower court impose an illegal sentence by placing defendant on house arrest with electronic monitoring, a form of intermediate punishment, where the legislature has expressly precluded such a sentence for the crime of sexual assault?

2. Did the lower court abuse its discretion by unreasonably deviating from the Sentencing Guidelines by imposing an excessively lenient sentence of house arrest and probation for the crime of sexual assault, a second degree felony, where the guidelines even in the mitigated range recommended incarceration in a state prison, and the court provided inade-

---

2. Sexual assault is defined as follows:
    § 3124.1. Sexual assault
    Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent. 18 Pa.C.S.A. § 3124.1.

3. 35 P.S. § 780–113(a)(16).

quate and improper reasons for its sentence?

(Commonwealth's Brief at 5.)

■ ¶ 9 In its first issue, the Commonwealth contends that the sentencing court "imposed an illegal sentence ... without statutory authorization" when it sentenced McIntosh to house arrest "because house arrest is a form of intermediate punishment and the legislature has expressly declared that a person convicted of sexual assault cannot be sentenced to intermediate punishment." [4] (Commonwealth's Brief at 21.) The Commonwealth premises its argument upon 42 Pa.C.S.A. § 9804, which, in relevant part, reads:

§ 9804. **County intermediate punishment programs**

(a) **Description.**—County intermediate punishment program options shall include the following:

(1) Restrictive intermediate punishments providing for the strict supervision of the offender including programs that:

(i) house the offender full or part time;

(ii) significantly restrict the offender's movement and monitor the offender's compliance with the program; or

(iii) involve a combination of programs that meet the standards set forth under subparagraphs (i) and (ii).

\* \* \*

(b) **Eligibility.**—

(1) No person other than the eligible offender shall be sentenced to a county intermediate punishment program.

42 Pa.C.S.A. § 9804. Further, the term "eligible offender" is defined in Section 9802 as follows:

Subject to section 9721(a.1) (relating to sentencing generally), a person convicted of an offense who would otherwise be sentenced to a county correctional facility, who does not demonstrate a present or past pattern of violent behavior and who would otherwise be sentenced to partial confinement pursuant to section 9724 (relating to partial confinement) or total confinement pursuant to section 9725 (relating to total confinement). The term does not include an offender with a current conviction or a prior conviction within the past ten years for any of the following offenses:

\* \* \*

18 Pa.C.S. § 3124.1 (relating to sexual assault)

42 Pa.C.S.A. § 9802.

¶ 10 Since McIntosh was sentenced in the present case upon a *nolo contendere* plea for sexual assault, the Commonwealth contends that he was not eligible for county intermediate punishment and that his sentence is thus illegal. While we do not disagree with the Commonwealth's primary premise, we nonetheless disagree with its characterization of McIntosh's sentence and thus its conclusion that it was illegal.

¶ 11 Ultimately, the resolution of this issue on appeal revolves around the question of whether the court imposed a sentence of house arrest,[5] as the Common-

---

**4.** Although the Commonwealth concedes that it did not raise this challenge below, it asserts, and we agree, that an argument that the sentencing court lacked the statutory authority to impose a sentence of house arrest goes to the legality of sentence, an issue that cannot be waived. *See Commonwealth v. Vasquez*, 560 Pa. 381, 387, 744 A.2d 1280, 1284 (2000).

**5.** It is uncontested that a sentence of house arrest is a form of intermediate punishment.

wealth contends, or imposed a sentence of total confinement, and then exercised the authority provided it by statute to grant parole[6], which parole was restricted to house arrest. Literally read, it seems clear that the court imposed a sentence of total confinement of 11½ to 23 months imprisonment, but then granted McIntosh parole only a few moments later. In imposing sentence, the court stated in open court:

On the sexual assault. . . .

Sentence is eleven and-a-half to twenty-three months; eight years consecutive probation on the sexual assault, followed by two years' consecutive probation on knowing and intentional possession of a controlled substance. For a total [of] twelve years you will be under my supervision.

You are going to [be] immediately paroled to house arrest. You will report here monthly.

(N.T. Sentencing, 3/02/05, at 114–15.) Additionally, the sentencing order reads:

Charge # 2—Not less than eleven and one half months nor more than twenty three months in the Phila. County Prison and eight years county reporting consecutive probation to run concurrently with any sentence now serving. Credit time served, if any on this case. Pay supervision fee $235.50 court costs, $20,000.00 fine, $20,000.00 restitution for counseling, $1,000.00 lab fee. Defendant granted immediate forthwith parole to House Arrest with Electronic Monitor. Defendant confined to home. Registration with State Police for Megan's Law. Payments to begin within 3 months. No supervisory position of employment or social setting. Remain in counseling treatment until cured. Stay away order issued. No discussion of case on inter-

net or anywhere. Status date 4–1–05, rm. 804, 8:00 A.M. By the Court.

(Sentencing Order, 3/2/05.)

¶ 12 Despite the literal wording of the court's sentence, the Commonwealth contends that the present case is indistinguishable from *Commonwealth v. DiMauro*, 434 Pa.Super. 129, 642 A.2d 507 (1994), a case where this Court found the imposition of a sentence of intermediate punishment illegal. We find *DiMauro* to be distinguishable. In *DiMauro*, "[f]our concurrent sentences of six months to five years less one day were imposed. [DiMauro] was given 30 days credit for time served in an in-patient treatment program and the remainder of his sentence was to be served at home subject to electronic monitoring." *Id.* at 130, 642 A.2d at 508. DiMauro was sentenced after pleading guilty to four counts of aggravated assault which was, like sexual assault, an offense which rendered DiMauro ineligible for intermediate punishment under 42 Pa.C.S.A. § 9729 (repealed), the then-applicable statutory provision relating to intermediate punishment, and the predecessor of 42 Pa. C.S.A. §§ 9802 and 9804. Because we concluded that DiMauro was not eligible for intermediate punishment under 42 Pa. C.S.A. § 9729, we vacated the judgment of sentence and remanded for resentencing.

¶ 13 Although the Commonwealth contends that *DiMauro* is indistinguishable from the present case, a review of the *DiMauro* opinion reveals that the term "parole" is not even mentioned. As such, there is no indication that DiMauro was given a sentence of total confinement and then paroled to house arrest, as was done here. From the history provided in *DiMauro*, we must assume that, rather than imposing a sentence of total confinement and then paroling DiMauro, the court di-

6. *See* 61 P.S. § 314.

rectly imposed a sentence of house arrest, a form of intermediate punishment which was clearly prohibited under Section 9729. Thus, in this admittedly technical but nonetheless dispositive fashion, *DiMauro* is distinguishable from the facts of the present case.

¶ 14 In its reply brief, the Commonwealth seemingly acknowledges that the court's sentence, literally read, imposed a sentence of total confinement, but that the court then granted McIntosh immediate parole. (*See* Commonwealth's Reply Brief at 12 ("The lower court, while purporting to impose an eleven and one-half to twenty-three month sentence, in reality sentenced defendant to intermediate punishment by immediately paroling him to house arrest with electronic monitoring.").) The Commonwealth then proffers an argument that invites us to look behind the literal words and actions of the court in imposing a sentence of total confinement and then granting parole and to consider instead the net effect of the court's actions vis-à-vis McIntosh—immediately placing him on house arrest. The Commonwealth contends that justifying the court's approach would involve "nothing more than semantics," arguing that "the lower court could not avoid the clear legislative proscription against placing a defendant convicted of sexual assault on house arrest by simply playing word games." (Commonwealth's Reply Brief at 12.) We understand the Commonwealth's frustration with the court's actions which seem patently designed to avoid the proscriptions set forth in 42 Pa.C.S.A. § 9804. Additionally, we would not disagree that the difference appears to be mostly a semantic one. However, we are aware of no authority which allows us to ignore the pronouncement of the court and, in effect, call a spade a heart. Absent such authority, we believe we are bound to find no illegality in the trial court's literal sentence.

■ ¶ 15 Moreover, disregarding the pronouncement of the court and recasting the court's words and actions would invite a whole different set of problems. If it were deemed impermissible for the court to grant parole on a sentence under its supervision immediately after imposition of the sentence, would the court be empowered to grant parole in two weeks?[7] A month? Six months? At what point would the court's granting of parole prior to the expiration of the minimum sentence turn a permissible sentence of total confinement into an impermissible sentence of intermediate punishment? In sum, we conclude this Court is not empowered to disregard what the court states is its sentence and look to the net effect of its

---

7. In its reply brief, the Commonwealth raises for the first time the claim that the trial judge's sentence of immediate parole violated 61 P.S. § 314, which requires, *inter alia*, that before a convict be paroled, the convict must file a petition for parole, and the Commonwealth must be served with the petition at least 10 days before a required hearing on the petition is held. *See* 61 P.S. § 314. The Commonwealth notes that no such petition was filed, nor was the 10–day service requirement adhered to. However, we conclude that the Commonwealth has waived this issue by failing to raise it below. Unlike the Commonwealth's argument that the court's sentence was illegal as violative of 42 Pa.C.S.A. §§ 9802 and 9804, *see supra* note 4, its argument that Section 314 was violated does not attack the legality of the sentence: the Commonwealth is not challenging the power of the court to have granted parole, but, rather, whether the proper procedures were followed. Thus, by failing to object below, we deem the Commonwealth to have waived its argument that the procedural requirements of Section 314 were not followed. *See Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa.Super.2000) ("A claim which has not been raised before the trial court cannot be raised for the first time on appeal.").

520 ■

actions.[8] Accordingly, we must reject the Commonwealth's contention that McIntosh's sentence was illegal.

■■■■ ¶ 16 In its second issue, the Commonwealth contends that the sentencing court abused its discretion in imposing an "excessively lenient sentence of house arrest and probation for the crime of sexual assault" and provided "inadequate and improper reasons for its sentence." (Commonwealth's Brief at 5.) Preliminarily, we note that sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa.Super.2001). Where an appellant challenges the discretionary aspects of a sentence, as in the instant case, there is no automatic right to appeal and an appellant's appeal should be considered a petition for allowance of appeal. *Id.* Before a challenge to a judgment of sentence will be heard on the merits, an appellant first must set forth in its brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence. *Id.* The Commonwealth has complied with this requirement.

¶ 17 In addition, an appellant must show that there is a substantial question as to whether the imposed sentence was inappropriate under the Sentencing Code. *See id.;* 42 Pa.C.S.A. § 9781(b). Whether an issue raises a substantial question is a determination that must be made on a case-by-case basis; however, in order to establish a substantial question, the appellant generally must establish that the sentencing court's actions either were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Ritchey,* 779 A.2d at 1185.

¶ 18 Here, as with its first issue, the Commonwealth's argument that the sentencing court imposed an excessively lenient sentence centers on its characterization of McIntosh's sentence as one of house arrest and probation, when in fact the sentence imposed, as we have explained above, was imprisonment of 11½ to 23 months, plus probation, and then immediate parole. Nonetheless, we conclude that the Commonwealth suitably asserts as error, and as substantial questions justifying allowance of appeal from the discretionary aspects of McIntosh's sentence, the sentencing court's failure to place on the record its reasons for departing from the sentencing guidelines, *see Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*) (assertion that the sentencing court did not provide sufficient reasons for imposing sentence outside of the sentencing guidelines raised substantial question), and its reliance on impermissible factors, *see Commonwealth v. Kraft,* 737 A.2d 755, 757 (Pa.Super.1999)

---

8. We further note that there are provisions in our statutory law explicitly prohibiting the granting of parole prior to the expiration of a minimum sentence. *See, e.g.,* 18 Pa.C.S.A. § 2506 (drug delivery resulting in death); 42 Pa.C.S.A. § 9717 (sentences for offenses against elderly persons); 42 Pa.C.S.A. § 9718 (sentences for offenses against infant persons). Illustrative of such statutory language is 35 P.S. § 780–113, which reads:

   **Prohibited acts; penalties**
   (k) Any person convicted of manufacture of amphetamine, its salts, optical isomers and salts of its optical isomers; methamphetamine, its salts, isomers and salts of isomers; or phenylacetone and phenyl–2–proponone shall be sentenced to at least two years of total confinement without probation, parole or work release, notwithstanding any other provision of this act or other statute to the contrary.

   35 P.S. § 780–113. Notably, the legislature has not to date chosen to impose such a provision with respect to sexual assault.

(claim that sentence is excessive because trial court relied on impermissible factor raises substantial question). These two claims are preserved in the Commonwealth's concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence, *see* Pa.R.A.P. 2119(f); and so we will review them.[9]

■ ¶ 19 Under the sentencing guidelines, the recommended minimum sentence for McIntosh was 36–54 months imprisonment in the standard range, 24–36 months imprisonment in the mitigated range, and 54–66 months imprisonment in the aggravated range. At the sentencing hearing, although the court was presented with arguments from defense counsel and counsel for the Commonwealth regarding the standard, mitigated, and aggravated sentence ranges for McIntosh's offense under the sentencing guidelines, in imposing sentence, the sentencing court never indicated its awareness of the sentencing guidelines—in particular, the court did not indicate it was cognizant that the sentence imposed was a departure from the sentencing guidelines, or, indeed, was significantly below the mitigated range.[10] Moreover, and as a result, the sentencing court provided no justification for why a downward departure from the guidelines was appropriate (or even, for that matter, why a mitigated range sentence would have been justified). The Sentencing Code provides:

> In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, *the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines.* Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.C.S.A. § 9721(b) (emphasis added). For this reason, the judgment of sentence must be vacated and McIntosh resentenced.[11]

■ ¶ 20 Moreover, after reviewing the reasons provided by the sentencing court for its sentence in its 1925(a) opinion, we agree with the Commonwealth that these reasons are insufficient to justify the sentence, and, in part, rely on impermissible factors.[12] A departure from the guide-

9. Although the language in its post-sentence motion is imprecise, we also find that these issues were preserved in that motion. (*See* Commonwealth's Motion for Reconsideration of Sentence, 3/4/05.)

10. The minimum sentence of 11½ months imprisonment imposed by the trial court was 12½ months shorter than the low end of the mitigated range provided by the sentencing guidelines.

11. The sentencing court's after-the-fact statement in its 1925(a) opinion in justification of its sentence is insufficient to satisfy the mandate of Section 9721(b) that a *contemporaneous* written statement of the reasons supporting deviation from the guidelines be provided.

12. We are required to vacate a sentence and remand for resentencing if we find

> that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In determining whether a sentence is unreasonable, an appellate court shall have regard for: "(1) The nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) The findings upon which the sentence was based[; and] (4) The guidelines promulgated by the commission." 42 Pa.C.S.A. § 9781(d).

*Commonwealth v. Celestin,* 825 A.2d 670, 676 (Pa.Super.2003).

lines should not be based on the sentencing court's conclusion that the guideline range is either too harsh or too lenient,

> but rather, departure should be based upon the conclusion that the conduct underlying the crime in question differed from the conduct typically associated with that crime so as to render the suggested punishment inappropriate for the particularized facts of the case.

*Commonwealth v. Kleinicke*, 895 A.2d 562, 589 (Pa.Super.2006). The sentencing court wholly failed to explain how the sexual assault in this crime differed from the typical sexual assault.

¶ 21 Also, in several respects the sentencing court relied on improper factors or mischaracterizations of the record in fashioning its sentence.[13][14] First, the sentencing court, in its 1925(a) opinion, found justification for its sentence by comparing the sentence in this case with the sentences in four cases the sentencing court found to be similar, each involving negotiated pleas to sexual assault and related crimes. (*See* Trial Court Opinion, 5/24/05, at 19–23.) As the Commonwealth points out, however, this Court has criticized just such analogizing as unreasonable. *See Commonwealth v. Celestin*, 825 A.2d 670, 680 (Pa.Super.2003) (in rejecting such comparisons as unreasonable, noting that "a sentencing court in one case cannot possibly know all of the various considerations and factors

underlying a negotiated plea in another case").

¶ 22 Next, the sentencing court, apparently in justification of a more lenient sentence, noted that incarceration would be a hardship for McIntosh's family because they were financially dependent on him. (Trial Court Opinion, 5/24/05, at 15, 18.) As the Commonwealth notes, however, the pre-sentence report indicates that, at that time, McIntosh was unemployed and had no employment prospects. (Pre–Sentence Report, 2/22/05.)

¶ 23 Most critically, however, and of the greatest concern to this Court, the sentencing court erroneously cast McIntosh's conduct, not as criminal, but as simple "bad judgment" (N.T. Sentencing, 3/2/05, at 114), as "inappropriate" (Trial Court Opinion, 5/24/05, at 13), as a "mistake of judgment" (*id.* at 12–13), and as "poor judgment, and dishonorable behavior" (*id.* at 14). Ignoring the factual basis for McIntosh's plea to the crime of sexual assault, the court stated that "[t]here is a possibility that the defendant's conduct, while morally wrong, was a mistake of judgment as to the desires of the complainant." (*Id.* at 12–13.) Having reviewed the plea colloquy (*see* N.T. Plea Hearing, 12/1/04, at 13–20), we conclude that there is no basis for these character-

**13.** Although the Commonwealth asserts that the sentencing court erroneously relied on McIntosh's lack of a prior record as a mitigating factor, thus double-counting this fact as it is already taken into account in the sentencing guidelines, our reading of its opinion shows that the sentencing court only considered this factor in relation to its probation decision (*see* Trial Court Opinion, 5/24/05, at 17), which is a proper consideration, *see* 42 Pa.C.S.A. § 9722.

**14.** Contrary to the claims of the Commonwealth that the sentencing court improperly

relied on the determination of the Sexual Offenders Assessment Board that McIntosh was not a sexually violent predator in fashioning its sentence (*see* Commonwealth's Brief at 52–56), this Court has held that a sentencing court may rely on such information as an aid at sentencing. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1277 (Pa.Super.2006) (rejecting contention that trial court erroneously relied on defendant's categorization as sexually violent predator to aggravate sentence, noting that factors leading to such categorization were proper sentencing considerations).

izations.[15] Moreover, perhaps as a result of these mischaracterizations, the court found that "probably the biggest loss of all" from McIntosh's conduct was not its obvious detrimental effect on the victim, but on the friendship and relationship between the families involved. (N.T. Sentencing, 3/2/05, at 115–16.)

¶ 24 The sentencing court was also, at times, oddly deferential to McIntosh. At the plea colloquy, for example, the court explained to McIntosh that he need not be worried about being seen by the public: "I've excused [the jury] so you didn't have to walk out there. Nobody of that group has to ever see you. The courtroom is clear. It's as if you and your lawyers were sitting and talking. I'll have your paperwork ready. Your lawyers can take you if you want." (N.T. Plea Hearing, 12/1/04, at 30.) Moreover, and most significantly, the sentencing court's concern for McIntosh's rehabilitative needs, in our view, vastly outweighed the court's consideration of society's, and the victim's, need for the imposition of a punishment commensurate with the seriousness of the crime committed by McIntosh.

¶ 25 Indeed, we find that the tenor of the sentencing hearing as a whole reveals that the sentencing court treated McIntosh, who was 52 years-of-age, less as a criminal than as a school boy requiring direction and supervision. (*See, e.g.,* N.T. Sentencing, 3/2/05, at 117 ("I do not believe you have to be warehoused. I think you just have to be directed in the right direction. You have to have someone like

me for twelve years over your head.").) The court also indicated its opinion that McIntosh had suffered enough: "[T]he defendant has also suffered punishment in the fact that he has lost his job and his reputation has been damaged significantly." (Trial Court Opinion, 5/24/05, at 16.) We find that the sentencing court failed to properly treat McIntosh's admitted criminal conduct as the very serious crime that it is, sexual assault. *See Celestin,* 825 A.2d at 681 ("The Pennsylvania Commission on Sentencing has assigned the offense of sexual assault to Level 5 of the sentencing guidelines, placing it in the same category as murder, voluntary manslaughter, rape, robbery, aggravated assault, kidnapping and arson.")

¶ 26 Accordingly, based on its later-stated reasons for its sentence and its characterizations of McIntosh's conduct, we find the sentencing court's reasoning erroneous and its sentence, constituting a severe downward departure from the sentencing guidelines, unreasonable. Accordingly, on this additional basis, we vacate the judgment of sentence and remand for resentencing. *See Kleinicke,* 895 A.2d at 589 (noting that where "the reasons offered for the departure [from the sentencing guidelines] do not appear reasonable to this Court, the sentence will be vacated and the case remanded for resentencing").

█ ¶ 27 Furthermore, in consideration of the expressions of the sentencing court that, in our view, depreciated the seriousness of the crime, disregarded the psychological harm suffered by the victim,

---

**15.** It seems these mischaracterizations led the court to credit McIntosh for what we find to be a meager acceptance of responsibility. (*See, e.g.,* Trial Court Opinion, 5/24/05, at 14 ("[T]he defendant accepted responsibility for his poor judgment, and dishonorable behavior.").) At the sentencing hearing, McIntosh explained that he now understood how he and the victim "got backed in this inappropri-

ate situation," and described his behavior "in that room in those ten minutes in my office" as "dishonorable" and the result of "poor judgment." (N.T. Sentencing, 3/2/05, at 110–12.) He added that "[o]n this night I did not act as a good husband or father." (*Id.* at 111.) As admissions of criminal culpability, we find such expressions utterly lacking.

may have inappropriately given rise to a more lenient sentence, and indicated an inappropriate deference by the sentencing court to McIntosh, we instruct on remand that the case be reassigned to another judge for resentencing.[16] *See In re R.W.,* 855 A.2d 107, 112 n. 3 (Pa.Super.2004) ("Assignment to a different judge on remand is appropriate when the judge's actions below demonstrated a degree of bias, capricious disbelief, or prejudgment such as to raise doubts as to his or her ability to preside objectively and fairly upon remand." (internal quotation marks omitted)).

¶ 28 Accordingly, for the foregoing reasons, McIntosh's judgment of sentenced is reversed and the case is remanded for resentencing before another judge of the Court of Common Pleas of Philadelphia County.

¶ 29 Judgment of sentence **REVERSED.** Motion to quash **DENIED.** Case **REMANDED** for resentencing. Jurisdiction **RELINQUISHED.**

¶ 30 BENDER, J. files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY BENDER, J.:

¶ 1 While I agree with the Majority's disposition of the Commonwealth's first issue, I cannot agree with the Majority's disposition as to the Commonwealth's second issue, nor the ultimate granting of relief. Thus, I dissent from that portion of the Majority's Opinion.

¶ 2 Before addressing the basis of my Dissent from the Majority's disposition, I must state that I agree with the Majority to the extent that they find an abuse of sentencing discretion. Indeed, I would go further and argue that the court further abused its parole authority. Given the crime to which Appellee pled *nolo contedere,* the sentence of 11½ to 23 months seems to have been inordinately "light," even if Appellant were to serve the entire sentence in the county jail. Moreover, in my opinion, this sentence was not justified by the explanations provided by the court. As such, in my opinion, the principle enunciated in *Commonwealth v. Walls,* 846 A.2d 152, (Pa.Super.2004), would compel vacation of the instant sentence. However, if a sentence of 11½ to 23 months appears inadequate for the crime committed, then the fact that Appellee was immediately paroled to house arrest, limiting his time in county prison to one day, seems unconscionable. Unfortunately, the exercise of parole authority is a matter that has not been seen as fit for appellate review leaving that decision immune from disruption, which brings us back to the matter that was actually appealed and is within our purview.

¶ 3 The above viewpoint on Appellee's sentence aside, I believe that in the present appeal we are constrained to affirm the judgment of sentence because the Commonwealth has either badly comprehended the present case and misdirected its argument toward a sentence that was not in fact imposed, or the Commonwealth has made a tactical decision to challenge the net effect of the sentence imposed and recast it into its practical effect rather than to attack its legal character. As the Majority's very fine analysis of the Com-

---

**16.** We note the recent *per curiam* order of our Supreme Court reversing an order of this Court which, *inter alia,* directed that a different sentencing judge be assigned on remand of the case. *See Commonwealth v. Klueber,* 904 A.2d 911 (Pa.2006) (per curiam). With-

out further explanation, our high Court indicated that such a direction was "inappropriate[ ]." *Id.* at 911. As this aspect of the *per curiam* order failed to garner the support of a majority of the justices, however, it is nonprecedential.

monwealth's first issue reveals, Appellee was sentenced to a term of imprisonment of 11½ to 23 months' imprisonment. Despite the contentions and arguments of the Commonwealth, Appellee was not sentenced to house arrest and probation.[17] The Commonwealth was certainly free to contend, as they did, that Appellee was not sentenced to house arrest and probation and to build its two arguments around this premise. They were also free to play it safe and argue in the alternative. However, having argued that Appellee was sentenced to house arrest and probation, and having failed to argue in the alternative, the Commonwealth has set the parameters of our appellate review and I believe we are bound by the parameters so set.

¶ 4 Before delving into the various reasons why I believe we are precluded from granting relief on the basis or bases relied upon by the Majority, let me first say that while I do not believe, that in determining the merit of an issue properly raised, we are limited by the exact argument offered by the appellant, I do believe we are limited to the issues properly raised by the parties.[18] As I understand the strictures of appellate review, an "issue" is essentially the specific legal/factual basis for the granting of relief. In contrast, the argument is the detailed rationale asserting why the legal basis in question compels the granting of relief by the appellate court. Thus, while we may not be constrained to the exact argument proffered by the parties in determining whether a legal issue has merit, we are constrained by the legal basis properly set forth by the appealing party.

¶ 5 In raising an issue, our law indicates that an issue should be set forth with sufficient specificity as to understand the contention of error being asserted. For instance, consider a contention that the court abused its discretion in failing to admit a hearsay statement. Standing alone, this issue would likely be waived for failing to assert a sufficient basis for relief as the stated basis is non-specific. However, a contention that the court erred in failing to admit a hearsay statement because the statement was a statement against interest would suffice. Nevertheless, in the above example, the fact that a litigant argued that the court erred in failing to admit a hearsay statement because the statement was a statement against interest would not entitle us to reverse the court's decision because we concluded that the statement was an excited utterance after concluding that the statement was not a statement against interest. That is, it would be incumbent upon the appellant to assert each hearsay exception he believed applied. The mere recitation of one exception would not provide us license to review the entire catalogue of hearsay exceptions to see if one applied and to then grant relief after finding one that had merit.

¶ 6 Notwithstanding the above concept of the term "issue," there are times where an issue raised is based upon a certain factual contention that is so essential to the argument that the factual contention must be perceived as defining the issue

---

17. It should now be clear that we are not, as the Commonwealth further contends simply dealing with a matter of semantics. Legally speaking, there is a substantial difference between a sentence of house arrest and probation and a sentence of 11½ to 23 months' imprisonment followed by parole. Because we are not empowered to scrutinize parole decisions for their reasonableness, we are limited to a review of the literal sentence imposed and are forced to wholly disregard the subsequent decision of the court to parole the prisoner.

18. See Kingston Coal Co., v. Felton Mining Co., 456 Pa.Super. 270, 690 A.2d 284 (1997).

before the Court as much as does the legal concept in question. For instance, if the tables were turned and had a criminal defendant been given a five to 10 year sentence but argued on appeal that the court's sentence of 20 to 40 years' imprisonment was excessive and an abuse of discretion, would we overlook the error and review the propriety of the five to 10 year sentence, or would we find this argument without merit as being inherently flawed as a result of the faulty premise contained within the argument? I believe the correct disposition would be the latter option and I believe that stance must be taken here.

¶ 7 Based upon the above principles, at a fundamental level, any review of the propriety of a sentence of 11½ to 23 months' imprisonment should be deemed improper due to the simple fact that the Commonwealth never argued that the imposition of a sentence of 11½ to 23 months constituted an abuse of discretion. The Commonwealth quite plainly raised an issue to this Court, and simply stated, it was not that a sentence of 11½ to 23 months' imprisonment was excessively lenient and was the result of an abuse of discretion. Rather, the issue raised and the argument presented was that the sentencing court's sentence of house arrest and probation constituted an abuse of discretion. The Statement of Questions Presented reads:

> Did the lower court abuse its discretion by unreasonably deviating from the Sentencing Guidelines by imposing **an excessively lenient sentence of house arrest and probation** for the crime of sexual assault, a second degree felony, where the guidelines even in the mitigated range recommended incarceration in a state prison, and the court provided inadequate and improper reasons for its sentence?

Commonwealth's Brief at 5 (emphasis added). The heading on the argument section correlating to the Commonwealth's second issue reads:

> The sentencing court abused its discretion by unreasonably deviating from the sentencing guidelines **to impose a sentence of house arrest and probation** for felony sexual assault where the court failed to even acknowledge on the record that it was deviating from the guidelines and its subsequent opinion makes clear that the sentence was based upon several impermissible factors.

*Id.* (emphasis added). In case the point requires more support, the opening sentence in the Commonwealth's Pa.R.A.P. 2119(f) statement of reasons relied upon for review of discretionary aspects of sentencing states:

> Even aside from the illegality of defendant's sentence, the sentencing court abused its discretion by imposing an excessively lenient sentence of house arrest and probation for a second degree felony sexual assault.

Commonwealth's Brief at 17.

¶ 8 Thus, in numerous places where the Rules of Appellate Procedure indicate that an issue is to be defined, the Commonwealth has steadfastly argued that the court abused its discretion in imposing a sentence of house arrest and probation. This resoluteness of position should bar a review of the sentence actually imposed, a sentence of 11½ to 23 months' imprisonment, as the Commonwealth has failed to explain how a sentence of 11½ to 23 months' imprisonment constituted an abuse of discretion. Since the Commonwealth has not asserted that the sentence actually imposed was the result of an abuse of discretion, reviewing the 11½ to 23 month sentence for an abuse of discretion results from this Court's overstepping

its bounds and addressing an issue not before us.

¶ 9 The Commonwealth's error or tactical choice in framing its issue and argument has not escaped the Majority. Indeed, the Majority acknowledges that the Commonwealth's argument erroneously "centers on its characterization of McIntosh's sentence as one of house arrest and probation, when in fact the sentence imposed, ... was imprisonment of 11½ to 23 months, plus probation, and then immediate parole." Majority Opinion at 520. In contrast to my position, the Majority deferentially overlooks the fact that the Commonwealth has misdirected its argument and, indeed, vacates the trial court's sentence by culling and developing an argument from the Commonwealth's Brief that should, with fair application of the rules of issue preservation, have been found waived on any number of several grounds. I simply cannot join with the Majority in "saving" the Commonwealth's appeal in this fashion, even if there were issues not raised or argued that have underlying merit.

¶ 10 Although the Majority appears to concede that the Commonwealth has misdirected its argument to a sentence that was not in fact imposed, the Majority concludes that two claims were "suitably asserted." Majority Opinion at 520. These two claims are: (1) that the sentencing court failed to place on the record its reasons for departing from the sentencing guidelines, and (2) that the court relied upon impermissible factors in imposing the sentence in question.[19] *Id.* For the reasons that follow, neither of these two claims should be deemed a matter that was properly raised to this Court.

¶ 11 In the first instance, the contention that the Commonwealth raised, as an independent basis for relief, a claim that the sentencing court failed to place on the record its reasons for departing from the sentencing guidelines or a claim that the sentencing court relied upon impermissible factors in imposing sentence should be dispelled by reviewing the statement of questions presented quoted above. The statement of question presented does not mention that the court relied upon impermissible factors, indeed the term "imper-

---

**19.** It is not apparent where the Majority finds these two issues were suitably asserted. The Opinion suggests that they were set forth in the Commonwealth's 2119(f) statement of reasons relied upon on appeal. In reality, only one of these two issues is arguably asserted therein. The Commonwealth's 2119(f) statement asserts that the court:

> did not even acknowledge that it was deviating from the Sentencing Guidelines when it sentenced defendant to house arrest and probation ..., and provided wholly inadequate reasons on the record to justify such a radical departure from the Guidelines. And, in its subsequent opinion pursuant to Pa.R.A.P. 1925(a), the court belatedly attempted to justify its sentence by improperly double counting factors already taken into consideration under the guidelines (such as defendant's lack of a prior record), and considered other improper factors.

Commonwealth's Brief at 17. The Commonwealth, in this passage, notes that the court did not even acknowledge that it was departing from the guidelines. However, it does not assert that the court failed to place its reasons for departing on the record. At the tail end of the quoted passage, the Commonwealth seemingly asserts, without elaboration, that the court considered improper factors. Whether or not this is the same as relying upon impermissible factors might be a matter of debate. Nevertheless, I am unaware that inclusion within a 2119(f) statement constitutes issue preservation. A 2119(f) statement represents a plea to this Court to exercise our review function which, in the case of discretionary aspects of sentencing, is not granted as a matter of right. Issue preservation results from, in order, raising the matter to the trial court, assertion in a Rule 1925 statement, when ruled to file one, and inclusion in the statement of questions presented.

missible factors" can be nowhere found. Similarly, the statement of questions does not assert that the court failed to acknowledge the guideline ranges and/or state its reasons for departing from the guidelines on the record. The issue as framed in the statement of questions presented clearly asserts that the court abused its discretion in imposing an excessively lenient sentence of house arrest and probation and that the court provided inadequate reasons for imposing a sentence of house arrest and probation. Pa.R.A.P. 2116 reads:

**Rule 2116. Statement of Questions Involved**

**(a) General rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, *without any other matter appearing thereon.* This rule is to be considered in the highest degree mandatory, admitting of no exception; **ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.**

(Emphasis added). The Majority overlooks the fact that these two claims were not included in the statement of questions involved and finds them suitably asserted because they were thrown, kitchen-sink style, in the Commonwealth's argument [20] supporting its primary assertion which, of course, was that the court abused its discretion in imposing an excessively lenient sentence of house arrest and probation. As such, the "claim" the Majority relies upon in proceeding through the door of judicial review, even if explicitly or implicitly argued in the argument section of the Commonwealth's Brief, should be found inadequately raised in the Commonwealth's Brief and, therefore, not properly before us.

¶ 12 Aside from the above defect, a greater obstacle is found in the fact that neither of these two claims was raised to the sentencing court below. The Majority does not contend that the two claims were raised below, and for good reason. Neither can be found to have been independently raised in the Commonwealth's motion for reconsideration of sentence, nor was either asserted orally at sentencing after sentence was imposed. The Commonwealth's motion for reconsideration is an expansive document of some 15 pages that contains several pages of factual recap followed by several pages of legal argument. The document does not specifically set forth an assertion of the individual claims of error committed by the court in imposing sentence, although, like its brief to this court, the argument section begins with the assertion that the sentencing court's sentence "is excessively lenient and unreasonably deviated from the sentencing guidelines." Commonwealth's Motion for Reconsideration of Sentence, at 11. This introductory sentence is then followed with several pages of argument supporting this general assertion of error. Nowhere in this document does the Commonwealth assert

---

**20.** To be fair, the Commonwealth does assert that the court imposed a sentence outside of the guidelines without stating its reasons for doing so on the record in the argument section of its brief. See Commonwealth's Brief at 32. However, given that the Commonwealth provided some 28 pages of argument, it might be expected that virtually every conceivable basis that could be pursued on appeal was asserted somewhere within those 28 pages. The fact that this basis was pursued within a 28 page argument does not excuse the failure to properly frame the issues under review in the statement of questions presented and to pursue each basis under a separate heading.

that the court erred in relying upon impermissible factors in sentencing or erred in deviating from the guidelines without stating its reasons on the record for the deviation. Where an issue argued on appeal is not raised orally at sentencing or set forth in a motion for reconsideration of sentence, it must be deemed waived on appeal. *See Commonwealth v. Lawson,* 437 Pa.Super. 521, 650 A.2d 876 (1994) (claim that the court, through the sentence imposed, punished him for his "intransigence" in proceeding to trial was found waived for failing to include it in a motion to reconsider sentence.). As such, the only issue preserved for appellate review in the post-sentence motion, particularly with respect to the discretionary aspects of sentencing, is that the court abused its discretion in imposing an excessively lenient sentence.

¶ 13 As a final point on waiver, I would find that the two issues/claims the Majority contends have been properly preserved should be found waived for failure to include them in the Commonwealth's Rule 1925 statement. The Commonwealth's Rule 1925 statement states quite succinctly:

Did the lower court err and abuse its discretion in unreasonably sentencing the defendant, outside the guidelines, for the reasons stated in the Commonwealth's Motion for Reconsideration of Sentence filed March 4, 2005?

¶ 14 I would contend that the fact that the issues were not set forth specifically would be a sufficient basis for finding a violation of *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), and its progeny. That is, I would find that a litigant cannot incorporate by referring to a 15 page document. Allowing such a satisfaction of Rule 1925 does not pinpoint the issues that the Commonwealth intends to pursue on appeal, which is the primary

reason for the rule's existence. Nevertheless, even if we allow the inclusion by reference to the motion to reconsider sentence, as discussed above, the issues the Majority finds sufficiently raised on appeal were not set forth in the motion for reconsideration. Thus, neither of the issues in question were included in the Commonwealth's Rule 1925 statement.

¶ 15 No mention is made of the Commonwealth's 1925 statement in the Majority's Opinion. I would surmise that the Majority treats the 1925/*Lord* issue as a non-issue due to the fact that even though a 1925 statement was filed, the court never ruled the Commonwealth to file a 1925 statement. There is a very good reason that the court did not rule the Commonwealth to file a 1925 statement. The Commonwealth, in preemptive fashion, voluntarily filed a 1925 statement the very day it filed its notice of appeal. The effect of this "early filing" was predictable, the court, having received a 1925 statement did not bother to rule the Commonwealth to file a document it had already filed.

¶ 16 I realize that Pa.R.A.P 1925 and the cases interpreting and/or applying the rule hinge waiver for non-compliance upon a party being ruled to file the statement. *See Forest Highlands Cmty. Ass'n v. Hammer,* 879 A.2d 223 (Pa.Super.2005). Nevertheless, I would hold that where a party preemptively files a 1925 statement, the same waiver rules apply and that a party is bound to the issues contained in that statement in the same fashion as one who is ruled to file a 1925 statement. The reason for my stance is illustrated by the present case. As the court did here, it is very likely that a court that receives a 1925 statement prior to ruling the appellant to file such a statement will not bother to do so. If waiver hinges upon being ruled to file the statement in these cases, cagey litigants who "jump the gun" will be

freed from the strictures facing other litigants on appeal. To the extent the majority finds the waiver rules of *Lord* inapplicable here, that is precisely what the net effect will be. Had the Commonwealth filed the 1925 statement it did in response to being ruled to file that statement, the Commonwealth would have been limited to the issues contained therein. Here, the Commonwealth was essentially free to expand upon the issues set forth in its 1925 statement without fear of a finding of waiver. Indeed, the Commonwealth exploited this circumstance here, as the first issue briefed is not set forth in its 1925 statement. The primary rationale for a strict rule of waiver regarding rule 1925 statements is to assure that the trial court has the opportunity to address the claims intended to be asserted on appeal in a written opinion. The trial court's viewpoint on the issue is deemed important in the appellate process. Here, the court did not have an opportunity to weigh in on the issues in question because they were not included in the Commonwealth's 1925 statement. I do not believe litigants should be allowed to skirt the *Lord* waiver rules by preemptively filing a 1925 statement and I would conclude that only the single issue set forth in the Commonwealth's 1925 statement has been preserved for appellate review.

¶ 17 Waiver issues aside, and returning to the merits of the Majority's disposition, I believe the Majority's ultimate disposition is not based upon the issues/claims they find the Commonwealth suitably asserted as error. While, in moving forward to a review of the sentence on the merits, the Majority ostensibly relies upon the contention that the court failed to state its reasons for departing from the guidelines and/or also relied upon impermissible factors in imposing sentence, it is clear that once the Majority conducts that review on the merits, it rejects the sentence, not upon one of those two grounds, but upon its conclusion that the factors cited do not support the sentence imposed. That is, it bases its ultimate disposition upon an issue other than the one cited as having been suitably asserted. This fact can be deduced from the fact that neither of these two bases would justify the review undertaken by the Majority, nor the relief the Majority ultimately grants.

¶ 18 With respect to a failure to state reasons on the record for deviating from the guidelines, the obvious reason for requiring the court to state its reasons for departing from the guidelines is so that the decision to depart can be assessed for its reasonableness thereby allowing a determination as to whether or not the court abused its discretion.[21] Thus, if the court failed to state its reasons on the record, it would not entitle this Court to assess the reasonableness of the sentence and reject it, as the Majority does here. Rather, a failure to state reasons on the record would compel us to remand the case to the sentencing court so that either a new sentence within the guidelines could be imposed or so that the court could enunciate its reasons for departing from the guidelines should it opt to once again depart from the guidelines. Only then would this Court be in a position to determine the overall reasonableness of the sentence.

21. In *Commonwealth v. Chesson*, 353 Pa.Super. 255, 509 A.2d 875, 876 (1986), we stated: "[t]he court's statement of reasons for deviating from the guidelines serves not only as a record of the court's rationale for the deviation but also as evidence that the court considered the guidelines. We cannot analyze whether there are adequate reasons for the deviation unless it is first apparent that the court was aware of, and considered, the guidelines."

¶ 19 The same logic suggests that should we find that the court relied upon an impermissible factor in sentencing a defendant, the appropriate remedy would be to remand for imposition of a new sentence without regard to the impermissible factor as it would be unclear what sentence would be imposed once the court removed the impermissible factor from consideration. Only the contention that the court's weighing of the various factors led to an unreasonable sentence, *i.e.,* one that was either too harsh or too lenient, would allow the *de novo* assessment of a suitable sentence as was done here.

¶ 20 The above point aside, a review of the Majority Opinion reveals that the Majority does not reject the sentence on the basis that an impermissible factor was relied upon. Indeed, in its discussion of the matter in its Opinion, the Majority cites at most, one supposedly "impermissible factor" the sentencing court relied upon in imposing sentence, the sentencing court's comparison of Appellee's case to other similar cases from Philadelphia County. Majority Opinion at 522. Once the Majority covers this impermissible factor, the Majority then embarks on an overall review of the sentence for its reasonableness.

¶ 21 That the Majority actually delves beyond the prospect of impermissible factors in conducting its review can be seen by the Majority's discussion after this one cited factor. After indicating that the court's analogizing to other cases was found unreasonable in *Commonwealth v. Celestin,* 825 A.2d 670 (Pa.Super.2003), the Majority moves on to reject as inaccurate the various factors cited by the court to support its sentence or disagrees that the factors cited justify the sentence imposed. The factors rejected include the sentencing court's reliance upon incarceration creating a hardship to Appellee's family, Majority Opinion at 522, (the Majority concludes that Appellee was currently unemployed), and the sentencing court's characterization of the criminal episode as resulting from poor judgment or a mistake of judgment. *Id.* The Majority further disagrees with the court's assertion that the greatest loss from this episode was the destruction of a friendship between the two families and notes, with apparent disapproval, the court's odd and inordinately deferential treatment to Appellee. *Id.* at 523. The Majority does not contend that any of these factors are impermissible. It merely disagrees with the sentencing court that these factors justify the substantial departure that took place here.

¶ 22 While I would not disagree with the Majority's assessments of the factors the court relied upon in sentencing Appellee, in rejecting the sentence, the Majority in fact concludes that the sentence imposed, 11½ to 23 months' imprisonment, was an unreasonable sentence in light of the circumstances presented, an issue/claim that was not raised and not argued by the Commonwealth and an issue other than the one cited by the Majority as having been suitably asserted. Thus, when one considers the whole of the Majority's decision, it is clear that they have essentially latched upon one supposedly raised claim and used it as an avenue to conduct a review of the sentence *in toto,* a review that goes far beyond the specific issue they contend was adequately raised. Thus, in practical effect, the Majority simply uses this claim of error to justify its review of the sentence. However, once the Majority passes through the door of appellate review, its scope of review far exceeds the basis cited.

¶ 23 However, the fact that Majority strays beyond the strictures of the issue deemed properly raised is not the only defect in the Majority's analysis, as it is

532 ■

far from clear that the one cited impermissible *factor*, *referencing other similar cases*, actually constitutes an "impermissible" sentencing factor or that the court actually relied upon this factor in imposing its sentence.

¶ 24 It should be noted that the sentencing court's reference to other cases was not made contemporaneously with the imposition of sentence, but rather was offered as justification in the trial court's opinion offered in response to the Commonwealth's appeal.[22] Thus, it is somewhat dubious to assert that this was a *factor the court relied upon in imposing sentence*. If the court was thinking of this factor when imposing sentence, the court did not mention it and we have no way of knowing that this was a factor relied upon in imposing sentence. In contrast, if the court offered such a comparison after the fact in arguing that the sentence was a fair exercise of judicial discretion, then this is an entirely different matter. We may disagree with the ultimate judgment of the court, and the arguments supporting its sentence, but it cannot be said that the court relied upon this factor in imposing the sentence under review.

¶ 25 As for whether the court's reference to other cases in Philadelphia County, where a similar sentence was imposed after plea agreements, constitutes an impermissible factor, the majority cites *Celestin*, another case where a sentence well below the guidelines was imposed, to disapprove of this practice. *Celestin* found other cases "irrelevant" to the decision to impose a sentence beneath the guideline ranges and calls comparison to other cases "unreasonable," in part, because the sentencing court cannot know all the considerations and factors that went into a nego-

tiated plea in another case. While it may seem like I am splitting hairs, an "irrelevant" factor is not the same as an impermissible factor. The term impermissible factor connotes a factor that the sentencing court is prohibited from considering, such as race, sex, religious affiliation or electing a trial over a plea. Therefore, an unreasonable weighing of a legitimate sentencing factor, or even the incorrect belief that an irrelevant factor is relevant to the case at hand, is something completely different than imposing a sentence based upon an impermissible factor. In the present case, there is no indication that Appellee's sentence resulted from reliance upon an impermissible factor.

¶ 26 In summation, while I agree with the Majority that the court imposed an unreasonably lenient sentence and unreasonably deviated from the sentencing guidelines, I disagree with the Majority that this matter has been properly preserved for appellate review. Rather, I find that the single issue raised with respect to the discretionary aspects of sentencing is misdirected toward a sentence that was not imposed, relegating this issue fundamentally flawed and, as argued, without merit. I further find that the Majority has conducted a review that goes far beyond the issue raised. Thus, I dissent. I would affirm the judgment of sentence.

---

**22.** The Commonwealth recognizes this point as well. *The Commonwealth's Brief states:* "Further, several of the reasons the court has belatedly offered to justify its sentence are *improper sentencing factors."* Commonwealth Brief at 25.