J-A30042-16

2017 PA Super 196

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DAWN MARIE BALL | |
| Appellee | Nos. 2260 MDA 2015, 2261 MDA 2015, 2262 MDA 2015, 2263 MDA 2015 |

Appeal from the Judgment of Sentence imposed December 14, 2015
In the Court of Common Pleas of Lycoming County
CP-41-CR at Nos: 0000045-2014, 0000547-2015, 0002134-2013, 0002148-2013

BEFORE:  BOWES, OLSON, and STABILE, JJ.

OPINION BY STABILE, J.:                      **FILED JUNE 22, 2017**

The Commonwealth of Pennsylvania appeals from the December 14, 2015 judgment of sentence imposing an aggregate five years of probation for four counts of aggravated harassment by a prisoner (18 Pa.C.S.A. § 2703.1).  The trial court imposed no further penalty for Appellee's guilty plea to a fifth count of aggravated harassment and one count of aggravated assault (18 Pa.C.S.A. § 2702).  We affirm.

All of the offenses at issue arise from incidents between Appellee and corrections officers at SCI Muncy.  On September 15, 2012, while awaiting trial for another offense, Appellee spit on and kicked two corrections officers.  The Commonwealth charged Appellee with two counts of aggravated

harassment by a prisoner, two counts of aggravated assault, and two counts of simple assault at docket number 2148 of 2013.

On November 6, 2013, Appellee screamed at and spit on a corrections officer at SCI Muncy. The Commonwealth charged her with aggravated harassment by a prisoner at docket number 2134 of 2013. Similar incidents occurred on November 18, 2013 and December 16, 2014, resulting in two more charges of aggravated harassment by a prisoner at docket numbers 45 of 2014 and 547 of 2015.

On August 18, 2015, Appellee entered a guilty plea to the aforementioned offenses. The trial court appointed Dr. Terri Calvert to examine Appellee and testify at Appellee's sentencing hearing. The sentencing hearing took place on December 1, 2015. At its conclusion, the trial court imposed a sentence of five years of probation. On December 11, 2015, the Commonwealth filed a timely motion to reconsider. The trial court conducted a hearing on December 14, 2015 and modified Appellee's sentence to include six months of electronic monitoring. The sentence otherwise remained unchanged. The Commonwealth's timely appeal followed.

The Commonwealth asserts the following errors:

A. Whether the trial court abused its sentencing discretion by imposing a sentence below the mitigated range of the sentencing guidelines.

B. Whether the trial court abused its discretion by imposing a sentence of probation without any incarceration.

C. Whether the trial court abused its discretion by imposing a sentence of guilt without further penalty for the most serious charge, aggravated assault.

Commonwealth's Brief at 9.

Each of these issues challenges the trial court's sentencing discretion. The Commonwealth preserved these issues in its timely post-sentence motion. The Commonwealth's brief includes a Pa.R.A.P. 2119(f) statement arguing that its assertions of error present substantial questions for review.

> A substantial question requires a demonstration that the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. This Court's inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits. Whether a substantial question has been raised is determined on a case-by-case basis; the fact that a sentence is within the statutory limits does not mean a substantial question cannot be raised.

*Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa. Super. 2013), *appeal denied*, 77 A.3d 636 (Pa. 2013). Instantly, the Commonwealth argues that the statutory factors set forth in 42 Pa.C.S.A. §§ 9722 and 9725 warranted a sentence of incarceration. Commonwealth's Brief at 22. The Commonwealth also argues that the trial court's sentence constituted an unreasonable deviation from the sentencing guidelines, given the circumstances of this case. *Id.* We conclude the Commonwealth has presented a substantial question for our review. *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001) (holding that the Commonwealth raised a substantial question where it alleged the sentence

was excessively lenient and provided specific reasons why the sentence violated sentencing norms), *appeal denied*, 796 A.2d 979 (Pa. 2002).

We review the trial court's sentencing scheme for abuse of discretion. **Commonwealth v. Walls**, 926 A.2d 957, 961 (Pa. 2007). "[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Id.**

Section 9781(c) of the Sentencing Code directs this Court to vacate a sentence and remand to the sentencing court if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). Likewise, § 9781(d) governs our review of the record:

> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Our Supreme Court has addressed the § 9781(c)(3) "unreasonable" inquiry as follows:

What makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed. 1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition.

[W]e decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Walls*, 926 A.2d at 963-64 (some citation omitted).

The Commonwealth notes that the guideline range for each of Appellee's offenses was 21 to 27 months of incarceration. The aggregate

guideline range, had the trial court imposed consecutive sentences for all six offenses, was 126 to 162 months of incarceration. As noted above, the trial court imposed five years, *i.e.*, 60 months of probation.

The Commonwealth cites several cases in which this Court vacated a sentence as excessively lenient. In **Commonwealth v. Childs**, 664 A.2d 994 (Pa. Super. 1995), *appeal denied*, 674 A.2d 1066 (Pa. 1996), for example, this Court vacated a ten-year probationary sentence for aggravated assault. The defendant, standing two feet away from the victim, pointed a gun at the victim's head. **Id.** at 995. The victim ducked before the defendant fired, and thus avoided injury. **Id.** The trial court reasoned that the defendant had avoided criminal behavior for a long time since his prior offense, and that the defendant's family depended on his financial support. **Id.** at 997. The record did not support the latter conclusion, inasmuch as the defendant's income was limited to welfare and food stamps. **Id.** Further, we concluded only two of the twelve factors set forth in 42 Pa.C.S.A. § 9722 arguably supported a sentence of probation. **Id.** at 998-99. We concluded the trial court failed to consider the need to protect the public from violent offenders, the gravity of the defendant's offense, and the defendant's rehabilitative needs. **Id.** at 999.

The Commonwealth also cites **Commonwealth v. Sims**, 728 A.2d 357 (Pa. Super. 1999), *appeal denied*, 743 A.2d 719 (Pa. 1999), in which this Court vacated a below-guideline sentence for two counts of simple

assault. The defendant held his girlfriend in a chokehold and bit her. *Id.* at 358. The defendant also threw his girlfriend's 9-year-old daughter down a stairway after the daughter confronted the defendant and told him to stop the assault of her mother. *Id.* The trial court imposed concurrent sentences of six to 23 months of incarceration. The applicable mitigated range was nine months for the defendant's assault of his girlfriend and 18 months for the assault of her daughter. *Id.* The trial court noted that the girlfriend did not want the Commonwealth to pursue charges against the defendant, the defendant accepted responsibility for his actions, and neither victim required medical attention. *Id.* The trial court also noted the defendant's need for mental health treatment. *Id.*

In vacating the sentence, we noted that the victim's requests for leniency were made in response to threats from the defendant. *Id.* at 359. As to the sentence for defendant's assault of the daughter, we wrote that "[a] sentence of only one-third the *mitigated* minimum guidelines sentence for assaulting this courageous girl is hard to understand, and certainly may not be based on the words of her still frightened mother." *Id.* at 359-60. The defendant's "boilerplate" statements of regret, which the pre-sentence investigator disbelieved, did not justify a mitigated range sentence even if true. *Id.* at 360. The victims' lack of need for medical attention was "serendipitous avoidance of an aggravating circumstance." *Id.*

In **Commonwealth v. Masip**, 567 A.2d 331 (Pa. Super. 1989), this Court reversed a nine-month sentence for possession with intent to deliver a controlled substance where the applicable mitigated minimum was 33 months. The trial court considered the defendant's inability to receive appropriate treatment for drug addiction during incarceration, as well as his need to learn English so that he could obtain meaningful employment. **Id.** at 333. The pre-sentence investigation ("PSI") indicated that the defendant had maintained employment at a K-mart and at a cleaning company. **Id.** at 335. The PSI also indicted that the defendant denied that he had a drug problem or that he needed treatment. **Id.** In other words, the PSI undermined the trial court's reasons for imposing a lenient sentence. **Id.** at 335.

The Commonwealth also relies on **Commonwealth v. Felix**, 539 A.2d 371 (Pa. Super. 1988), *appeal denied*, 581 A.2d 568 (Pa. 1990), in which a defendant with multiple prior convictions received four to 23 months of county incarceration for burglary. The applicable mitigated guideline range was 25 to 33 months. **Id.** at 380. The trial court noted that the defendant was recently married and that his wife was pregnant. **Id.** The trial court also noted that after having been in prison for several months the defendant "ought to have chilled off from the thrill of your dope thing, right.?" **Id.** This Court described the defendant as a 24-year-old "youthful career criminal" with a "substantial record of criminal activity." **Id.** at 379. We

further noted that burglary is a first-degree felony, and that the offense at issue was the defendant's fourth burglary. *Id.* at 381. A mental health evaluation concluded that the defendant's prospects for "adequate adjustment" to life outside of prison were "marginal at best." *Id.* at 379, 381. Ultimately, we concluded that the trial court relied on mitigating factors that did not justify a sentence so far below the mitigated guideline range. *Id.* at 381.

Finally, the Commonwealth relies on **Commonwealth v. McIntosh**, 911 A.2d 513 (Pa. Super. 2006), *vacated in part*, 922 A.2d 873 (Pa. 2007),[1] wherein the defendant received a sentence for sexual assault whose "net effect [. . . ] was to allow [the defendant] to avoid incarceration, aside from the day he spent in jail after his arrest, and to serve a period of house arrest followed by [an aggregate ten years of probation.]" *Id.* at 516.[2] The defendant was a professor at the University of Pennsylvania and the victim was a 23-year-old student in the veterinary school and the defendant's niece. *Id.* at 515. The applicable mitigated guideline range was 24 to 36 months of incarceration. *Id.* at 521. At sentencing, the trial court did not

---

[1] The Supreme Court vacated this Court's directive that the matter proceed before a different sentencing judge but otherwise did not disturb this Court's analysis or result.

[2] The Court explained elsewhere that that actual sentence imposed was "11½ to 23 months of incarceration, plus probation, and then immediate parole." *Id.* at 520.

acknowledge the guidelines or explain its significant downward departure. *Id.* That omission, by itself, required this Court to vacate and remand. *Id.* (citing 42 Pa.C.S.A. § 9721(b)).

In its Pa.R.A.P. 1925(a) opinion, the trial court in *McIntosh* relied upon cases in which a negotiated plea resulted in a sentence similar to the one the trial court imposed. *Id.* at 522. We noted that prior decisional law rejected such reasoning. *Id.* (citing *Commonwealth v. Celestin*, 825 A.2d 670, 680 (Pa. Super. 2003), *appeal denied*, 844 A.2d 551 (Pa. 2004)). The trial court also noted the financial hardship that incarceration would impose on the defendant's family. *Id.* We rejected that reasoning because the PSI indicated the defendant was unemployed and had no employment prospects. *Id.* "Most critically, however, and of the greatest concern to this Court, the sentencing court erroneously cast [the defendant's] conduct, not as criminal, but as simple 'bad judgment.'" *Id.* The *McIntosh* Court also observed that the trial court's concern for the defendant's rehabilitation apparently outweighed its consideration of society's and the victim's need for imposition of a suitable punishment. *Id.* at 523. "Indeed, we find that the tenor of the sentencing hearing as a whole reveals that the sentencing court treated [the defendant], who was 52 years-of-age, less as a criminal than as a school boy requiring direction and supervision." *Id.* The trial court also considered the defendant's loss of job and reputation sufficient punishment. *Id.*

The *McIntosh* Court explained that "[a] departure from the guidelines should not be based on the sentencing court's conclusion that the guideline range is ether to harsh or too lenient[.]" *Id.* at 521-22. We treated the faulty reasoning set forth in the trial court's Pa.R.A.P. 1925(a) opinion as an "additional basis" for vacating the judgment of sentence.[3] *Id.* at 523.

Instantly, the trial court relied in part on the 2012 court-ordered report of Dr. Frank Daly, the psychiatrist at SCI Muncy. Dr. Daly opined that Appellee would be better off in a mental health facility, and that persistent confinement to the Restricted Housing Unit ("RHU") was exacerbating her mental illness. Psychiatric Evaluation of Dr. Frank Daly, 7/24/2012, at 7-8. The trial court also relied heavily on the testimony and report of Dr. Terri Calvert, who was familiar with Dr. Daly's report and the report from Appellee's stay at Torrance State Hospital. N.T. Sentencing, 12/1/2015, at 15.

In her report, Dr. Calvert wrote the following:

> It is my opinion, within a reasonable degree of psychiatric certainty, that [Appellee's] aggressive behavior, which has resulted in multiple charges of assault, is the product of the effects of trauma and abuse experienced by [Appellee] during her lifetime, combined with increased depression after the death of her grandfather in 2013, and the deprivation-filled and sometimes psychologically abusive environment of the RHU."

---

[3] Arguably, the *McIntosh* Court's analysis of the trial court's Rule 1925(a) opinion is dicta. Remand was required given the trial court's failure to explain at the sentencing hearing its reasons for departing from the guidelines.

Calvert Report, 10/30/2015, at 8.

> It is also my opinion that continued incarceration would serve only to maintain or escalate the confrontations with officers, as the type of Cognitive-Behavioral Therapy necessary to help [Appellee] learn to identify her hyperarousal symptoms and triggers, and learn more adaptive coping strategies, is not available for inmates in the RHU, or anywhere at SCI-Muncy for that matter. The harsh environment of the RHU will only exacerbate [Appellee's] PTSD [Post Traumatic Stress Disorder] and depression/anxiety, contributing to her aggressive behavior. [. . .] Finally, based on all of the information available to me at this time, it is my opinion that [Appellee] does not pose a significant risk of danger to others in the community, as her assaultive behavior has occurred almost entirely in the solitary confinement environment, and most if not all of her legal charges have been theft-related or traffic offenses.

*Id.* at 9.

Dr. Calvert's conclusions differ markedly from the conclusions of the treating doctor at Torrance, a point the trial court raised during the sentencing hearing. N.T. Sentencing, 12/1/2015, at 18-19. The trial court read the evaluation from Torrance to say that Appellee was manipulating the system and needed to be "warehoused" in prison in order to protect the public. *Id.* at 19. The trial court asked Dr. Calvert to explain why her conclusions differed markedly from those of the doctor at Torrance. Dr. Calvert offered the following observations:

> Well I spent three hours with [Appellee], and it [sic] conducted a thorough interview, and explored the areas that perhaps others didn't. You know her – her history of, you know, early childhood experiences, symptoms, depression, anxiety, obsessive/compulsive symptoms, the PTSD symptoms like nightmares, flashbacks, and I – and because I had the time to speak with [Appellee] I was able to try to tease out is [Appellee]

- 12 -

being honest with me. Is she being genuine with me? Is she, you know –

THE COURT: I assume you've been doing this your entire career because of the nature of the individuals you've been seeing?

THE WITNESS: Yes. For – for example [Appellee] did not say, oh everyone is against me, oh everyone is treating me poorly, and you know, this kind of thing. I – her – her report was that – that some officers say negative things. Not all officers. Some officers treat me well, and they're the ones that I get along with.

So I – I attempted to – to sort of to see whether she was exaggerating, and I didn't get that impression. So many officers interact with [Appellee] on a daily basis, how many of them are, you know, do you get along with, and how many don't you get along with, you know. Are some of the officers pleasant with you? So most of the time when people are exaggerating or – or – or attempting to say this is why I do what I do, it's pretty obvious. It's exaggerated. They – they – they go out of their way to talk about their traumas in great detail. [Appellee] didn't do that.

She – she, like almost every post-traumatic stress disorder patient I've spoken with hesitated to report the trauma. Hesitated to report negative things about her mother. You know, she – and – and that's – that's the avoidance, that's the, you know, not wanting to talk about it. So – so that fit, you know, she talked about, you know, guilty about her past behavior, about how, you know, certain triggers in the prison would, you know, prompt her to get angry.

I mean so she – she – she fits pretty much all of the classic criteria for post-traumatic stress disorder. Her – her mother was physically and psychologically abusive. The home environment was chaotic and neglectful. Father wasn't there. Mother moved her all around with her sister. Sister abruptly died when [Appellee] was 16 or 17 of an [anaphylactic] reaction to a common orthodontic procedure. Just a lot of traumatic things.

*Id.* at 20-21.

The trial court also pressed Dr. Calvert on whether Appellee's antics were truly a mental illness, or just an act. *Id.* at 24. Dr. Calvert opined that Appellee's behavior "seems like a whole lot of effort, you know, just for that." *Id.* at 25. She also opined that Appellee was likely minimizing her history of trauma and that a therapeutic environment, rather than confinement in the RHU, could improve Appellee's symptoms over time. *Id.* at 27. Likewise, Dr. Calvert's written report notes "no evidence of exaggeration of symptoms or events, or feigning symptoms for secondary gain." Calvert Report, 10/30/2015, at 6.

During the prosecution's brief cross-examination, Dr. Calvert acknowledged that her report was based on what Appellee told her. *Id.* at 38. She did not verify Appellee's reported behaviors and experiences with third parties. *Id.*

Ultimately, the trial court concluded that further time in prison and RHU would exacerbate Appellee's symptoms and make her more dangerous. The trial court also relied on Dr. Calvert's conclusion that Appellee was not a threat to the public. Furthermore, the court noted that if Appellee violates probation for any reason, it could revoke Appellee's probation and "warehouse" her in prison. N.T. Sentencing, 12/1/2015, at 63.

The Commonwealth argues the trial court "placed undue weight on Appellee's perceived mental illness, while disregarding many other aggravating factors[.]" Commonwealth's Brief at 25. Those factors include

Appellee's poor prison disciplinary record, her significant criminal record, her persistent commission of new offenses while prior charges were pending, and her lack of remorse. *Id.* at 25-26. The Commonwealth notes that Appellee received mental health treatment, to no avail, during a prior sentence. Commonwealth's Brief at 28. Appellee was returned to prison after evaluations at Norristown State Hospital and Torrance State Hospital. Psychiatric Evaluation of Dr. Hansa Shah, 6/24/2013, at 3; Torrance State Hospital Forensic Summary, 3/11/2015, at 9. After the 60-day evaluation at Norristown, the trial court imposed a sentence of nine to eighteen months of incarceration followed by three years of probation on a prior charge of aggravated harassment. A doctor at Torrance concluded RHU was the only safe option for Appellee. Torrance State Hospital Forensic Summary, 3/11/2015, at 10. Appellee threatened to kill personnel at Torrance. Torrance State Hospital Supplement to Forensic Summary, 3/12/2015, at 5. Neither hospital concluded that Appellee suffered from PTSD.

In summary, the Commonwealth believes the trial court overemphasized Appellee's rehabilitative needs[4] and underemphasized her

---

[4] In furtherance of its argument in support of the trial court's overemphasis of Appellee's rehabilitative needs, the Commonwealth notes that the trial court received correspondence and articles from Appellee. Commonwealths' Brief at 40. This issue does not alter our analysis. Importantly, the Commonwealth does not argue that the trial court sent any inappropriate *ex parte* correspondence to Appellee. Concerning the articles the trial court received from Appellee, and the other scholarly research the court did on its
*(Footnote Continued Next Page)*

significant criminal history and the seriousness of her offenses. As noted above, the trial court imposed no penalty for aggravated assault and one of the five aggravated harassment charges. The Commonwealth also argues that the trial court has rewarded Appellee for bad behavior and created an incentive for other inmates to commit similar misconduct in hope of obtaining a release from prison.

While this case presents a close question, we conclude the trial court acted within its permissible sentencing discretion. We do not believe that any of the cases discussed above controls the instant outcome. ***Childs*** is distinguishable in that the defendant committed an act that, if successful, would have killed the victim. ***Childs***, 664 A.2d at 994. The record did not support the trial court's finding that the defendant's family was dependent upon his financial support, and the trial court's sentence was not commensurate with the obligation to protect the public from violent offenders. ***Id.*** at 997-99. In ***Childs***, as in the instant matter, many of the § 9722 factors did not support a sentence of probation. ***Id.*** Nonetheless, we believe ***Childs*** is distinguishable because of the violence of the offense— if successful, the defendant most likely would have killed the victim—and the lack of record support for part of the trial court's rationale. Instantly, the

*(Footnote Continued)* _____

own, the Commonwealth fails to offer any legal argument to support obtaining relief on that basis. In any event, we have based our affirmance on the evidence Appellee introduced at sentencing, and not on the trial court's independent research.

record contains conflicting evidence on many points, but the record does contain support for the trial court's findings. In particular, the record contains extensive evidence about Appellee's mental health needs, including the fact that confinement in RHU is exacerbating her problems and making her more dangerous. The § 9722 factors, as we will explain below, do not bind a sentencing court.

In **Sims**, the trial court relied on a statement the victim's mother made under threat from the defendant. **Sims**, 728 A.2d at 359-60. This Court also concluded the defendant's boilerplate acceptance of responsibility was insufficient and that the lack of injury to either victim—both of whom were thrown down a stairway—was fortuitous. **Id.** The facts of **Sims** are distinguishable from the instant matter. **Masip** is distinguishable because uncontroverted facts in the PSI undermined the trial court's rationale for imposing a lenient sentence. **Masip**, 567 A.2d at 335.

In **Felix**, the trial court seemingly ignored pertinent evidence undermining its rationale for imposing a lenient sentence. **Felix**, 539 A.2d 381. In particular, the defendant's mental health evaluation indicated the defendant had little chance of adjusting to life outside of prison. **Id.** Instantly, by way of contrast, Dr. Calvert's evaluation supports the trial court's sentence. Other evidence of record contradicts Dr. Calvert's conclusions, but the trial court did not ignore the conflicting evidence.

Rather, the court examined Dr. Calvert on the conflicting evidence during the sentencing hearing.[5]

In **McIntosh**, the trial court ostensibly treated the defendant's sexual assault of the victim as mere bad judgment. **McIntosh**, 911 A.2d at 522-23. Furthermore, the trial court overemphasized the defendant's need for rehabilitation as compared to the seriousness of a sexual assault and the need to protect the public from such offenses. **Id.** Further, the record did not support the trial court's finding that the defendant's family was financially dependent upon him. **Id.** Instantly, as we have already explained, the testimony and report of Dr. Calvert and the report of SCI Muncy psychiatrist Dr. Daly confirm that Appellee has significant mental health needs that cannot be met in a prison environment, and that further confinement will make her more dangerous.

Finally, we note that the trial court undertook detailed analysis of § 9722.[6] Trial Court Opinion, 3/2/2016, at 17-20. The trial court noted that

_____

[5] The Commonwealth argues, without citation of a specific example, that the trial court's questioning of Dr. Calvert at the sentencing proceeding "bordered on defense advocacy." Commonwealth's Brief at 30. We do not believe the record supports the Commonwealth's assertion. We quoted portions of the transcript in which the trial court examined Dr. Calvert on the conflict between her conclusions and those of the doctors at Torrance.

[6] Section 9722, titled "Order of Probation," provides:

*(Footnote Continued Next Page)*

*(Footnote Continued)* ————————————————

The following grounds, **while not controlling the discretion of the court**, shall be accorded weight in favor of an order of probation:

(1) The criminal conduct of the defendant neither caused nor threatened serious harm.

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm.

(3) The defendant acted under a strong provocation.

(4) There were substantial grounds tending to excuse or justify the criminal conduct of the defendant, though failing to establish a defense.

(5) The victim of the criminal conduct of the defendant induced or facilitated its commission.

(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained.

(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime.

(8) The criminal conduct of the defendant was the result of circumstances unlikely to recur.

(9) The character and attitudes of the defendant indicate that [she] is unlikely to commit another crime.

(10) The defendant is particularly likely to respond affirmatively to probationary treatment.

(11) The confinement of the defendant would entail excessive hardship to him or his dependents.

(12) Such other grounds as indicate the desirability of probation.

42 Pa.C.S.A. § 9722 (emphasis added).

Appellee's conduct in this case—spitting, cussing, and in one instance kicking—did not cause or threaten serious harm as per § 9722(1). *Id.* at 18.

> The court is not by any means condoning Appellee's actions. The bottom line, however, is that the aggravated assault charges were based on an attempt to cause injury to an enumerated official. There is nothing in the record to show that any of the corrections officers were actually injured in this case. Appellee also doesn't have any communicable diseases that would be transmitted to the corrections officers through her saliva.

*Id.* at 18. Similarly, the trial court concluded that Appellee, given her mental illness, did not contemplate that her conduct would cause or threaten serious harm as per § 9722(2). *Id.* In this respect, we find this case particularly distinguishable from *Childs*. The trial court also found that Appellee's mental illness somewhat excused her conduct, as per § 9722(4). Based on Dr. Calvert's testimony, the trial court found that Appellee is likely to respond well to probationary treatment, in accord with § 9722(10). Based on our review of the evidence above, we conclude the record supports the trial court's findings. Based on its express language, § 9722 does not bind the trial court's analysis. Furthermore, the Commonwealth does not cite any law for the proposition that most or all of the § 9722 factors must weigh in favor of probation.

Finally, the trial court addressed the Commonwealth's argument that its sentence will create an incentive for other inmates to act in similar fashion:

The Commonwealth was more concerned with the message that the court's sentence was sending to other inmates without mental health problems than the history, character, and condition of Appellee and the nature and circumstances of these particular crimes. This concern was misplaced. If an incident happened with a typical inmate without mental health issues, his sentencing factors would not be the same; therefore, the sentence would not be the same. The typical inmate at SCI Muncy would not have the same mitigating circumstances as Appellee. Escalating consequences and penalties generally have the desired deterrent effect on a normal, rational thinking individual, whereas several mental health experts have opined that they do not have the desired effect on Appellee due to her mental health disorders.

*Id.* at 23.

After a thorough review of the law, the record, and the trial court's reasons for its sentence, we conclude that the trial court acted within its permissible discretion in imposing a sentence below the guideline range. The record supports findings that Appellee has special mental health problems that are addressable in a probationary setting but are likely to be exacerbated by continued incarceration. The trial court did not impose a sentence based on a generalized concern that the sentencing guidelines are too harsh in this case. Rather, the court conducted a detailed review of the available evidence and tailored its sentence to the unique circumstances of this case. We therefore do not conclude that the sentence is unreasonable.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/22/2017</u>