J-S27025-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MICHAEL GILSON | : | No. 1491 WDA 2018 |

Appeal from the Judgment of Sentence October 9, 2018
In the Court of Common Pleas of Crawford County
Criminal Division at No(s):  CP-20-CR-0001112-2017

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OTT, J.:                    FILED NOVEMBER 15, 2019

The Commonwealth appeals from the judgment of sentence imposed on October 9, 2018, in the Court of Common Pleas of Crawford County, after the trial court granted the motion of appellee, David Michael Gilson, to modify his sentence, and resentenced him to a term below the mitigated range of the sentencing guidelines.  On appeal, the Commonwealth argues:  (1) the trial court abused its discretion by ignoring the provisions of 42 Pa.C.S. § 9721(b) and failing to consider the guidelines when choosing from its available sentencing options; and (2) the court relied on impermissible factors in imposing a sentence that was outside the guidelines and below the mitigated range.  Based on the following, we affirm.

Gilson's conviction stems from a domestic violence incident that occurred on October 9, 2017.  Neither the probable cause affidavit nor the transcript from the guilty plea colloquy are included in the certified record.

_____
*   Retired Senior Judge assigned to the Superior Court.

Therefore, the facts underlying Gilson's guilty plea are not readily available.[1]

What we can discern from the testimony and discussion at the sentencing

hearings is the victim, Shalesha Labow, was Gilson's former girlfriend and

mother of his three-year old daughter. On the day in question, Gilson and

Labow got into an argument after Labow discovered Gilson had been

unfaithful. The argument escalated, during which time Gilson cornered

Labow, pulled her hair, put her in a headlock, and threatened to kill her unless

she unlocked her cell phone. See N.T., 9/5/2018, at 18. He then hit her in

her head with the phone. See id. During the incident, which lasted only

about eight minutes, Labow received a cut on her hand, which she believed

she obtained from wood trim or a nail sticking out of her door.[2] See N.T.,

10/2/2018, at 14. After police arrived and arrested Gilson, they found a knife,

as well as three firearms (two rifles and a shotgun) stored in the bedroom

_____

[1] The victim's handwritten statement to police is included in the Presentence Investigation Report. However, as will be explained infra, the victim clarified and changed some of the details surrounding the incident when testifying at Gilson's sentencing hearings.

[2] In her statement to police, Labow claimed Gilson cut the palm of her hand with a knife. See Victim/Witness Statement Form, Shalesha Labow, 10/10/2017, at unnumbered 2. However, at the initial sentencing hearing, Labow testified she cut her hand on a door, and there was "still blood" on the door to corroborate that fact. See N.T., 9/5/2018, at 21. When asked about the discrepancy, she explained: "At first, I didn't know what cut me and the cops said that [the knife] cut me. The cop took the knife. My blood was not found on the knife." Id.

closet.[3]  See id. at 11.  Gilson is not permitted to possess a firearm because of a prior felony conviction.[4]

Gilson was subsequently charged with persons not to possess firearms (a first-degree felony), aggravated assault, terroristic threats, simple assault, recklessly endangering another person, and harassment.[5]  On May 3, 2018, Gilson entered a guilty plea to one count each of persons not to possess firearms and terroristic threats.  As per the plea agreement, the firearms offense was modified to substitute Subsection 6105(c)(2) for Subsection (b) as the underlying offense, and the terroristic threats offense was modified to delete reference to a weapon.  See Trial Court Opinion, 10/30/2018, at 1 n.2.

_____

[3] In her statement to police, Labow claimed Gilson "grabbed a gun out of the closet and said I will blow a hole in the door and blow your head off." Victim/Witness Statement Form, Shalesha Labow, 10/10/2017, at unnumbered 1.  However, at the sentencing modification hearing, Labow clarified she never saw Gilson retrieve a gun during the incident because she was inside the bathroom with the door closed.  See N.T., 10/2/2018, at 11. She only surmised he did so because she knew there were guns stored in the closet, and she heard a door shut when he threatened to shoot her.  See id. at 11-12.  Furthermore, while defense counsel told the trial court it was his understanding the guns "were found in a closet[,]" the prosecutor noted the file did not "state specifically where they were found."  N.T., 10/2/2018, at 6-7.

[4] In his presentence investigation report, Gilson stated that although he knew he was not permitted to possess a firearm, he was storing them for a friend and he believed "they would be safer with him."  Pre-Sentence Report, 9/5/2018, at 3.

[5] See 18 Pa.C.S. §§ 6105(a)(1), 2702(a)(4), 2706(a)(1), 2701(a)(1), 2705, and 2709(a)(1), respectively.

Therefore, both offenses were graded as first-degree misdemeanors, and the Commonwealth agreed to recommend concurrent sentences. See 18 Pa.C.S. §§ 6106(c)(2) and 2706(a)(1); Trial Court Opinion, 10/30/2018, at 2. At the September 5, 2018, sentencing hearing, the trial court sentenced Gilson to a term of 21 to 60 months' imprisonment on the firearms charge, and a concurrent 18 to 60 months' imprisonment on the terroristic threats charge. The firearms sentence fell within the mitigated range of the sentencing guidelines, and the terroristic threats sentence was in the standard range.[6] Gilson's prior record score reflected he was a repeat felony offender (RFEL) because of three felony convictions that occurred between 1995 and 1998.

Gilson filed a timely motion to modify his sentence, and the trial court held a modification hearing on October 2, 2018. At that time, Labow requested the court reduce Gilson's prison term. At the conclusion of the hearing, the trial court granted Gilson's motion, and amended his sentence as follows:

> a. As to Court 1, Persons Not to Possess, Use, Manufacture, etc. Firearms, a misdemeanor of the first degree, [Gilson] shall serve an Intermediate Punishment Sentence of 60 months with the first 8 months to be served in the Crawford County Correctional Facility with full credit for all time served prior to now, with work release, to be followed by 4 months of House Arrest/Electronic Monitoring. The balance of the Intermediate Punishment sentence will be

_____

[6] The guidelines range for Gilson's convictions were as follows: (1) for the firearms offense, 27 to 30 months' imprisonment in the standard range, and 21 months in the mitigated range; and (2) for terroristic threats, 12 to 18 months' imprisonment in the standard range, and nine months in the mitigated range. See Guideline Sentence Form, 9/5/2018.

- 4 -

served under the supervision of the Adult Probation/Parole Department.

b. As to Count 3, Terroristic Threats, a misdemeanor of the first degree, the sentence of the Court is for [Gilson] to serve an Intermediate Punishment Sentence of 60 months with the first 8 months to be served in the Crawford County Correctional Facility with full credit for all time served prior to now, with work release, to be followed by 4 months of House Arrest/Electronic Monitoring. The balance of the Intermediate Punishment sentence will be served under the supervision of the Adult Probation/Parole Department.

This sentence will run concurrent with the sentence imposed at Count 1.

Memorandum and Order, 10/8/2018, at 3-4. The court also specified additional conditions of Gilson's Intermediate Punishment sentence, including treatment for his mental health issues and drug and alcohol addiction. See id. at 4. This timely Commonwealth appeal followed.[7]

Both of the issues raised by the Commonwealth on appeal challenge the discretionary aspects of Gilson's sentence. Such a claim is not appealable as of right, but "must be considered a petition for permission to appeal." Commonwealth v. Best, 120 A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). In order to obtain review of a discretionary sentencing claim, the Commonwealth must include in its brief a concise statement of the reasons relied upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). See Pa.R.A.P. 2119(f). The concise statement "must

_____

[7] On October 19, 2018, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth filed a concise statement on October 26, 2018. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 30, 2018.

demonstrate that a substantial question exists as to whether the sentence imposed is inappropriate under the Sentencing Code." Commonwealth v. Hock, 936 A.2d 515 (Pa. Super. 2007). A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." Commonwealth v. Ventura, 975 A.2d 1128, 1133 (Pa. Super. 2009), appeal denied, 987 A.2d 161 (Pa. 2009) (citation omitted).

Here, the Commonwealth contends in its Rule 2119(f) statement the trial court imposed an "excessively lenient sentence that was an unreasonable downward deviation below the mitigated range of the sentencing guidelines[.]" Commonwealth's Brief at unnumbered 13. Further, it asserts, in doing so, the court "impermissibly ignored the requirements of 42 Pa.C.S.A. § 9721(b), and additionally relied on impermissible factors[.]" Id. at unnumbered 14. We conclude the Commonwealth has raised a substantial question justifying our review. See Commonwealth v. Ball, 166 A.3d 367, 369-370 (Pa. Super. 2017) (allegation that sentence constituted unreasonable deviation from sentencing guidelines raised substantial question); Commonwealth v. McIntosh, 911 A.2d 513, 520 (Pa. Super. 2006) (allegation that court relied on impermissible factors in imposing lenient sentence raised substantial question), aff'd in part, rev'd in part (on other grounds), 922 A.2d 873 (Pa. 2007).

Preliminarily, we note:

We review the trial court's sentencing scheme for abuse of discretion. "[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will."

Ball, supra, 166 A.3d at 370 (citation omitted).

Section 9721 of the Sentencing Code instructs that, in determining the proper sentence for a defendant,

the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b). Section 9781 sets forth the paramaters of appellate review of a sentence. See 42 Pa.C.S. § 9781. Subsection (d) provides that when reviewing a sentence on appeal, the appellate court should consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d). Furthermore, when, as here, the trial court imposes a sentence that falls outside the sentencing guidelines, Subsection 9781(c)(3) instructs the appellate court to vacate the sentence and remand for resentencing only if it determines the sentence is "unreasonable." 42 Pa.C.S. § 9781(c)(3).

Yet, what makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed.1987); see 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition. Cf. United States v. Crosby, 397 F.3d 103, 115 (2nd Cir. 2005)(explaining concept or reasonableness in context of sentencing matters).

Thus, given its nature, we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

Commonwealth v. Walls, 926 A.2d 957, 963–964 (Pa. 2007). With this background in mind, we consider the allegations raised by the Commonwealth on appeal.

- 8 -

First, the Commonwealth argues the trial court failed to consider the factors listed in Subsection 9721(b) before resentencing Gilson to a term of county intermediate punishment ("CIP"). See Commonwealth's Brief at unnumbered 16. According to the Commonwealth, the trial court determined that "so long as an offender is CIP eligible, then CIP is within the discretion of the sentencing court regardless of the guidelines." Id. at unnumbered 17. It maintains, however, a court must consider the factors in Subsection 9721(b) "to determine if the offender should be placed on CIP, in other words eligibility is the starting point." Id. at unnumbered 18. Here, the Commonwealth emphasizes Gilson's prior record included two older burglaries and a drug delivery felony, plus "several other misdemeanors with two of those being assaults in the years 2001 and 2007." Id. Because the record displayed an "ongoing pattern of violence and the bottom of the mitigated range [was] almost two years in prison," the Commonwealth insists "the imposition of CIP is an abuse of discretion." Id. at 19.

To the extent the Commonwealth implies Gilson was ineligible to receive a CIP sentence based upon his prior record, we find that claim waived because it was not included in the Commonwealth's Pa.R.A.P. 1925(b) concise statement. Rather, the Commonwealth framed its sole issue in the concise statement as follows:

> The court erred when it abused its discretion in sentencing the defendant to a sentence outside the guidelines well below the bottom of the mitigated range in violation of the sentencing code and the fundamental norms concerning the sentencing process.

Concise Statement of Matters Complained of on Appeal, 10/26/2018. The Commonwealth did not challenge Gilson's eligibility to receive a CIP sentence, and therefore, that issue is waived. See Commonwealth v. Edwards, 874 A.2d 1192, 1195-1196 (Pa. Super. 2005) (Commonwealth's failure to challenge reasonableness of defendant's expectation of privacy in Rule 1925(b) statement waived issue on appeal).

Furthermore, the record demonstrates the trial court properly considered the Section 9721(b) factors before determining a CIP sentence was appropriate. At the original sentencing hearing on September 5, 2018, the trial court had the benefit of a pre-sentence investigation report, which detailed Gilson's troubled upbringing, history of untreated mental illness, and drug and alcohol addiction. The report also included a victim impact statement in which Labow requested the court impose "a longer parole sentence" with "very little jail time" so that Gilson could continue to parent her children. See Pre-Sentence Report, 9/5/2018, at 7-8, Victim Impact Statement, 7/6/2018. At that time, the court imposed a mitigated range sentence for the firearms offense, and a standard range sentence for the terroristic threats charge.

Following Gilson's request for a further reduction, the trial court held a modification hearing, and ultimately determined a CIP sentence was appropriate. In its October 9, 2018, memorandum and order, the trial court emphasized the victim "unequivocally expressed her dissatisfaction" with the original sentence imposed, and implored the court not to allow the "roughly eight minute encounter that gave rise to the charges ... [to] overshadow all of

the efforts made by [Gilson] in materially changing the course of his life from when he was a juvenile and a young man." Memorandum and Order, 10/9/2018, at 1. Moreover, the victim clarified she did not observe Gilson use any weapons during the incident, and she believed Gilson's conduct was "likely the result of an untreated mental illness." Id. at 1-2. The court noted Gilson's "early childhood, childhood, adolescent years and early adulthood were marked by significant adverse experiences[,]" including a mother who was a prostitute and eventually died from an overdose, and an absentee father who was murdered the day before Gilson was going to be reunited with him. Id. at 2. The trial court further emphasized Gilson's felony convictions occurred during his late adolescence and early adulthood, 20 years before the incident that gave rise to the charges herein. The court noted:

> [Gilson's] remorse for his conduct is extraordinarily profound. One of the reasons the Court denied bail pending the filing of a post sentence motion or an appeal was because of the Court's concern over [Gilson's] distraught nature. Before this incident, [Gilson] had achieved a relatively high level of stability when compared to his past. He was clean and sober. He was financially successful, with a good reputation and he is reported to have been a very good father. All of this evaporated after the filing of these charges, sending him into a tail spin.

Id.

With regard to the firearms offense, the court observed: (1) the firearms were rifles, not handguns; (2) Gilson only constructively possessed the firearms because he was storing them for a friend; and (3) "there was no evidence that the rifles were used in connection with the terroristic threats conviction." Id. With respect to the terroristic threats conviction, the court

- 11 -

stated Labow "convinced the Court that the punishment for [Gilson's] conduct should not deprive him of an opportunity to restore his previous good reputation, improve his life and actively parent their child." Id. at 3. Lastly, the trial court explained that it could "more closely monitor[]" Gilson's rehabilitation by imposing a county sentence, including supervisory conditions regarding drug, alcohol and mental health treatment. Id.

The factors cited by the trial court in support of its sentence track those listed in Section 9721(b). Although the court recognized Gilson's convictions were serious offenses, it also acknowledged Gilson did not physically possess a firearm during the incident, and Gilson's threat to his ex-girlfriend appeared to be out of character and driven, in part, by untreated mental illness. The court specifically asked Labow if she feared Gilson, to which she replied, "No, I don't." N.T., 10/2/2018, at 17. The trial court acted well within its discretion when it found Labow's testimony credible. See Commonwealth v. Derry, 150 A.3d 987, 998 (Pa. Super. 2016). It is evident from the record that the court did not believe Gilson posed a threat to the public, and both his rehabilitative needs as well as the needs of the victim, would be better served by a CIP sentence. Indeed, our review of the factors listed in both Sections 9721(b) and 9781(d) does not lead to the conclusion that the court imposed an "unreasonable" sentence. Rather, the court carefully weighed the testimony of Labow, Gilson's background, and his credible demonstration of remorse, against the circumstances surrounding the incident, and sentencing

guideline ranges. Finding no abuse of discretion on the part of the trial court, we conclude the Commonwealth's first issue fails.

Next, the Commonwealth contends the trial court abused its discretion when it reduced Gilson's sentence based upon improper factors, namely the three reasons listed in the court's October 8, 2018, memorandum and order: "the firearms in question were long guns, [] the victim of the terroristic threats desires this outcome, and [] the court can better supervise [Gilson's] rehabilitation." Commonwealth's Brief at unnumbered 19.

The Commonwealth first argues "guns are guns," so that the type of firearm Gilson constructively possessed was irrelevant because he was not permitted to possess any firearm. Id. at unnumbered 20. Further, the fact Gilson claimed he was holding the guns for a friend who was "prohibited from possessing firearms" should have been an aggravating factor, rather than a mitigating factor. Id. With respect to Labow's plea for a reduced sentence, the Commonwealth emphasizes Labow was only the victim of the terroristic threats charge, whereas the victim of the firearms charge was "society/the Commonwealth." Id. at unnumbered 22. It cites to Commonwealth v. Sims, 728 A.2d 357 (Pa. Super. 1999), appeal denied, 743 A.2d 918 (Pa. 1999), for the proposition that one victim's statement cannot be used to mitigate a sentence relating to a different victim. Lastly, while the Commonwealth recognizes a court may be able to more closely monitor a defendant housed locally, the advantages of "county level supervision" should not alone be sufficient to justify a CIP sentence. Commonwealth's Brief at

unnumbered 23. Indeed, the Commonwealth insists the trial court's "focus on rehabilitation has completely forced out any other factors which makes the sentence in this case unreasonable." Id.

Again, our review of the record reveals no abuse of discretion on the part of the trial court. First, the trial court appropriately considered the fact that there was "no evidence [] the rifles [Gilson constructively possessed] were used in connection with the terroristic threats conviction." Trial Court Memorandum and Order, 10/9/2018, at 2. Although we recognize the offense of persons not to possess does not require the defendant to have used the firearm in connection with a crime, the court could consider Gilson's explanation for his constructive possession of the rifles as a mitigating factor.[8] While the fact the firearms were not handguns does not itself mitigate the crime, the court scrutinized this fact in conjunction with Gilson's background and explanation for his constructive possession.

Further, the Commonwealth correctly states that Labow is not the "victim" of the firearms offense. Nevertheless, because the seizure of the firearms stemmed from the incident involving Labow, we find the trial court could consider Labow's plea for a sentence reduction in determining the

_____

[8] Gilson told the Pre-Sentence Investigator that "he was storing the firearms for a friend, and although he knew he couldn't possess them, they would be safer with him." Pre-Sentence Report, 9/5/2018, at 3. Counsel further explained during the sentence modification hearing that Gilson "had a friend who apparently was on supervision ... [and since] Gilson was not on supervision [] he agreed to take possession of those while the person was ... disabled from possessing [the] firearms." N.T., 10/2/2018, at 6.

- 14 -

appropriate overall sentencing scheme. Moreover, the Commonwealth's reliance on Sims, supra, is misplaced. In that case, the defendant was convicted of two counts of simple assault based upon a domestic abuse incident involving his girlfriend and one of her daughters, a nine-year old whom he threw down the steps and punched in the head. See Sims, supra, 728 A.2d at 358. In imposing a sentence below the mitigated range of the guidelines, the court relied upon the following facts: the defendant's girlfriend did not want to see the prosecution pursued, the victims did not require medical attention, the defendant was in need of mental health treatment, the defendant's prior record contained only one crime of violence that occurred 13 years prior, and the defendant pled guilty so that the victim would not have to testify. See id.

On appeal by the Commonwealth, a panel of this Court concluded the trial court abused its discretion in imposing such a lenient sentence. The panel emphasized the victim's request for leniency was precipitated by threats from the defendant. She specifically informed the court she was reluctant to testify because she was "afraid that [the defendant] would get mad and maybe hurt [her] or [her] family." Id. at 359 (record citation omitted). The panel commented: "This uncontroverted evidence shows [the defendant] intimidated [the victim] in an attempt to avoid being tried and sentenced; that she succumbed is not mitigation." Id. Additionally, the panel concluded the defendant's "success in coercing the mother was certainly not a reason to impose a lesser sentence for the crime against the child, assaulted for trying

- 15 -

to save her mother from [the defendant] in the first place." Id. The panel opined: "A sentence only one-third the mitigated minimum guideline sentence for assaulting this courageous girl is hard to understand, and certainly may not be based upon the word of her still frightened mother."[9] Id. at 359-360. Accordingly, the Sims panel's focus on different victims of different crimes involved facts clearly distinguishable from those before us. Indeed, here, there was no specified second victim, and Labow's request for leniency was not prompted by her fear of Gilson. Rather, when the court specifically asked Labow if she was afraid of Gilson, she unequivocally stated she did not fear him. See N.T., 10/2/2018, at 17.

Additionally, while the Commonwealth concedes it is a "truism" that local supervision of Gilson would allow the court to more closely monitor his rehabilitation, nevertheless, it argues Gilson's rehabilitative needs should not take priority over all other factors. Commonwealth's Brief at unnumbered 22-23. However, as explained supra, the trial court considered a number of factors before reducing Gilson's sentence to a term of CIP, including: the victim's genuine request for leniency; the age of Gilson's prior felony convictions; Gilson's untreated mental health issues; the tumultuous

_____

[9] The panel also found the trial court's determination that the defendant was remorseful contradicted the pre-sentence investigator's opinion that the defendant "lacked sincerity and honesty." See Sims, supra, 728 A.2d at 360. Overall, based upon the full record, the panel determined the court's stated reasons for the sentence imposed did "not mitigate the offense or offender" and did not justify a sentence below the mitigated range of the guidelines. Id.

- 16 -

circumstances involving Gilson's upbringing; Gilson's sincere remorse for these crimes; and the circumstances surrounding Gilson's possession of the firearms. Accordingly, upon our review of the record, we find no abuse of discretion on the part of the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2019